UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:08-cr-00187-AGF |
| | ) | |
| STEPHEN HENDERSON, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

Defendant Stephen Henderson filed a pro se motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Henderson's motion has since been supplemented by counsel, including the most recent supplement filed in response to the Court's October 31, 2023 Order (ECF No. 313) requesting briefing to address the 2023 amendments to the Sentencing Guidelines. *See* U.S.S.G. §1B1.13 (effective Nov. 1, 2023); *see also* U.S. Sent'g Comm'n, *Amendments to the Sentencing Guidelines, Policy Statements, Official Commentary, and Statutory Index* (effective Nov. 1, 2023) (hereinafter, "Official Commentary").[1] The Court previously granted Henderson's motion to hold in abeyance his motion for a sentence reduction under 18 U.S.C. §3582(c)(1)(A), pending the effective date of these 2023 amendments. ECF No. 312.

---

[1] https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202305_Amendments.pdf.

The motion and supplements argue that Henderson is currently serving an unusually long sentence—a mandatory life sentence for a non-violent drug offense—and that had Henderson been sentenced today, he would have been sentenced to a vastly shorter term of imprisonment, resulting in a gross disparity.  Henderson argues that compassionate release is warranted because, in addition to having already served more than 15 years of his unusually long sentence, he suffers from obesity and several very serious medical conditions[2] and nearly died from renal failure when previously infected by COVID-19 in 2020.  Further, Henderson contends that he poses no danger to any person or the community, having been transferred to a reduced security institution after peacefully serving his sentence over the past decade and a half.[3]

The Government opposes Henderson's motion, primarily arguing that Henderson's medical conditions fail to constitute extraordinary and compelling grounds for release and that Eighth Circuit precedent forecloses this Court from granting compassionate release based on a nonretroactive change in the law.  Alternatively, the Government argues that the 2023 amendment to the Sentencing Guidelines permitting consideration of such nonretroactive changes in the law is invalid.  Finally, the Government argues that Henderson still poses a danger to the community, particularly in light of his alleged conduct

---

[2]    These medical conditions are detailed extensively in Henderson's briefs, filed under seal.

[3]    In his original motion, Henderson asserted an additional ground for compassionate release.  However, as Henderson did not pursue this ground in his supplemental briefing, the Court need not consider it.  *Compare* ECF No. 281-1 at 16, *with* ECF Nos. 317, 329-1.

around the time of his arrest.

The Court concludes that Henderson has shown extraordinary and compelling reasons warranting a sentence reduction. Considering the sentencing factors under 18 U.S.C. § 3553(a) and whether Henderson is a danger to the community, the Court concludes that it is appropriate to grant Henderson's motion for compassionate release. The Court will order that Henderson's sentence be reduced to time served plus a term of 10 years of supervised release. Further, the Court will add an additional condition of supervision up to six months at a residential reentry center, as deemed appropriate by the probation office, and will also update the terms of supervised release to reflect current language. Finally, the Court will provide that the BOP may delay Henderson's release for a period not to exceed 14 calendar days for the purpose of investigating a home plan, any necessary quarantine or medical care, or to make travel arrangements for release.

## BACKGROUND

In 2008, Henderson and his co-defendant, Julius Turrentine, were charged with conspiracy to distribute and possess with intent to distribute in excess of five kilograms of cocaine, and distribution of in excess of five kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 846, and 851(a).[4] At the time, § 841(b)(1)(A) provided that an individual who was convicted of these charges "shall be sentenced to a mandatory term of life

---

[4] At the time of these charges and Henderson's later sentencing, this case was before the late Honorable Judge Charles A. Shaw. The case was transferred to the undersigned on or about February 9, 2022. ECF No. 282.

imprisonment without release" if such individual had "two or more prior convictions for a felony drug offense."  21 U.S.C. § 841(b)(1)(A) (2006).

Henderson had two prior drug convictions in state court, one for simple possession of cocaine in 1988, when he was 18 years old and for which he received probation; and one for the sale of less than 50 grams of cocaine in 1992, at age 22, for which he was sentenced to 10 years' imprisonment, was paroled in May of 2000, and was discharged from parole in May of 2005.  ECF No. 227, PSR at ¶¶ 29, 33.  The Government filed a prior felony information that, under the then-applicable statute, raised the sentencing range for Henderson's offense to a mandatory life sentence.

Although, according to the PSR, Henderson and Turrentine were both culpable in the drug offenses (ECF No. 227, PSR at ¶ 13),[5] Turrentine agreed to plead guilty to a related money laundering charge (in which Henderson was not involved) in exchange for the Government dismissing the drug charges against him.  Turrentine was sentenced in March of 2009 to 33 months' imprisonment.  Case No. 4:08-cr-00187-AGF, ECF No. 157.

Henderson, on the other hand, proceeded to trial on both drug counts charged.  Prior to trial, the Government indicated that it had evidence of conflicting police reports with respect to an incident that took place between Henderson and another individual, Tyrone Armstrong, while Henderson was out on bond in March of 2008.  Specifically, Henderson

---

[5]      Judge Shaw ordered, and the Government did not oppose, that the PSR be modified to indicate that Turrentine was also culpable in the drug conspiracy.  ECF No. 244, Sent'g Tr. at 9:21-10:6.

alleged that Armstrong was given $10,000 to kill Henderson and attempted to do so while the two were riding together in a vehicle.  Whereas Armstrong alleged that Henderson attempted to establish a contract to murder four informants who assisted in Henderson's arrest in the instant offense.[6]  *See* ECF No. 227, PSR at ¶  4.  Judge Shaw excluded any evidence of this alleged incident at trial, and no evidence of Armstrong's or Henderson's allegations regarding the incident was presented at trial or at sentencing.  *See*  ECF No. 240, Trial Tr. Vol. I, at 16-17; *see also* ECF No. 244, Sent'g Tr.  Following trial, a jury convicted Henderson of both drug counts charged.

On September 22, 2009, Judge Shaw sentenced Henderson to two terms of life imprisonment, to be served concurrently, plus 10 years of supervised release, as required under the then-applicable statute.  As Judge Shaw recognized at the time of sentencing, if he were not bound by statutory mandatory minimum, the applicable advisory range under the Sentencing Guidelines, based on Henderson's offense level and criminal history, would have been 324 to 405 months' imprisonment.  ECF No. 244, Sent'g Tr. at 18-19.  Judge Shaw also indicated at the time of sentencing that he believed the mandatory life sentence he was required to impose was unduly harsh, particularly as compared to Turrentine's 33-month sentence.  *See, e.g.*, *id.* at 16-17.

---

[6]    The Government also sought to revoke Henderson's bond as a result of this incident, Henderson did not challenge the revocation, and the Magistrate Judge issued an order revoking Henderson's bond.  Henderson was thus detained throughout the pretrial proceedings.  ECF No. 44; *see also* ECF No. 293-1, Gov't Resp. at 4-5.

Henderson's conviction and sentence were affirmed on appeal.  He is currently incarcerated at FCI Butner Medium I serving a life sentence.  He is 54 years old.

In 2018, several years after Henderson's conviction and sentence became final, Congress passed the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018), which eliminated mandatory life sentences for non-violent drug offenders like Henderson and which expanded the ability of certain individual defendants to seek a reduction in sentence. But Congress did not make the life sentence reduction retroactive.

## **DISCUSSION**

A court can reduce a final sentence only under the very limited circumstances listed in 18 U.S.C. § 3582(c).  Before the passage of the First Step Act, a defendant could not file a motion for compassionate release directly with the court.  Instead, only the Bureau of Prisons (BOP) could request compassionate release.  *See, e.g., United States v. Mills,* No. 1:10-CR-117 CAS, 2014 WL 3845441 (E.D. Mo. Aug. 5, 2014).  The First Step Act changed that so that a defendant may now file a direct motion with the court "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ."  § 3582(c)(1)(A).  The Government does not dispute that Henderson has exhausted his administrative remedies.

Section 3582(c)(1)(A) "permits a district court to reduce a prisoner's sentence if,

6

after considering the factors in 18 U.S.C. § 3553(a), 'it finds that . . . extraordinary and compelling reasons warrant such a reduction' and 'that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, 28 F.4th 929, 930 (8th Cir. 2022) (quoting 18 U.S.C. § 3582(c)(1)(A)).  "In 28 U.S.C. § 994(t), Congress directed the Commission to define 'what should be considered extraordinary and compelling reasons for [a] sentence reduction.'  [Prior to the First Step Act], the Commission published its substantive definition in USSG § 1B1.13."  *United States v. Rodriguez-Mendez*, 65 F.4th 1000, 1002 (8th Cir. 2023).

Specifically, in Application Note 1 to § 1B1.13, the Commission defined certain categories of circumstances qualifying as "extraordinary and compelling reasons" under § 3582(c)(1)(A), such as a defendant's medical condition, age, and family circumstances. Prior to November of 2023, Application Note 1 also included a catch-all category of "other reasons" determined by the Director of the BOP.  This catch-all provision was drafted before the First Step Act was enacted, and thus at a time when only the BOP could file compassionate release motions.  The Commission had not previously amended § 1B1.13 to address the First Step Act because it lacked a quorum to do so.[7]

In light of that fact, the circuit courts of appeal were split prior to November of 2023, as to whether § 1B1.13 was still an "applicable policy statement" binding district

---

[7]    From 2019 until August of 2022, the Commission did not have a quorum and was therefore unable to adopt policies or amendments.

courts' discretion to evaluate defendant-filed compassionate release motions.  *Rodriguez-Mendez*, 65 F.4th at 1002.  Although the Eighth Circuit declined to take a position on the issue, it indicated in *Rodriguez-Mendez* that § 3582(c)(1)(A) "makes consistency with an applicable policy statement a *mandatory* condition for a reduction in sentence," and it noted that a 2023 amendment to § 1B1.13 (proposed at that time, though now effective and discussed below) "should resolve any doubt it continues to be an 'applicable policy statement.'"  *Id.* (citation omitted) (emphasis in original).

As noted above, effective November 1, 2023, the Sentencing Commission amended § 1B1.13 to implement the First Step Act and to explicitly address defendant-initiated motions for compassionate release.  *See* U.S.S.G. § 1B1.13 (effective Nov. 1, 2023).  This amendment identifies several circumstances that, alone or in combination, may qualify as extraordinary and compelling reasons warranting a sentence reduction.  *See* U.S.S.G. § 1B1.13.

As relevant here, § 1B1.13, as amended, provides:

(a) In General.—Upon motion of the . . . defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

(1) (A) Extraordinary and compelling reasons warrant the reduction;

. . .

(2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) The reduction is consistent with this policy statement.

(b) Extraordinary and Compelling Reasons.—Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:

(1) Medical Circumstances of the Defendant.—

. . .

(B) The defendant is—

(i) suffering from a serious physical or medical condition,

(ii) suffering from a serious functional or cognitive impairment, or

(iii) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

(D) The defendant presents the following circumstances—

(i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

(ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

(iii) such risk cannot be adequately mitigated in a timely

9

manner.

. . .

(5) Other Reasons.—The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

(6) Unusually Long Sentence.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

*Id.*

The amendment further provides:

(c) Limitation on Changes in Law.—Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

(d) Rehabilitation of the Defendant.—Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement. However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.

*Id.*

10

As especially relevant here, subsection (b)(6) of this amendment specifically authorizes district courts to consider nonretroactive changes in the law (other than nonretroactive changes to the Guidelines Manual) as extraordinary and compelling circumstances warranting a sentence reduction, but only under a narrow set of circumstances.  Specifically, (a) the defendant must be serving an unusually long sentence; (b) the defendant must have served at least 10 years of that sentence; (c) the change in the law must have produced a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed; and (d) the court must have fully considered the defendant's individual circumstances.

### Henderson's Eligibility Under Subsection (b)(6)

There is no question that Henderson's sentence of life imprisonment is unusually long.  According to statistics published by the Commission, only 709 federal offenders—0.2% of the total federal offender population—received a life sentence during fiscal years 2016 through 2021.  *See* U.S. Sent'g Comm'n, *Life Sentences in the Federal System* (July 2022), at  2, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2022/20220726_Life.pdf*; see also* Official Commentary, *supra* n.1, at 12 ("[B]etween fiscal year 2013 and fiscal year 2022, fewer than 12 percent (11.5%) of all offenders were sentenced to a term of imprisonment of ten years or longer.").  It is also undisputed that Henderson has served far more than 10 years.[8]

---

[8]    Henderson has been in federal custody since April 2, 2008.

Further, a change in the applicable statute produced a gross disparity between the life sentence that Henderson is serving and the sentence likely to be imposed at the time his motion was filed.  The Court finds that the change in law that eliminated the life sentence, alone, creates a gross disparity between Henderson's sentence and the otherwise applicable Guideline range that would have applied at the time of sentencing in 2009.  Indeed, Judge Shaw expressly noted the significant disparity between Henderson's mandatory life sentence, imposed after Henderson invoked his right to trial, and the 33-month sentence Henderson's co-conspirator, Turrentine, received after he took a plea deal.[9]

Moreover, a retroactive amendment to the Sentencing Guidelines made effective after the time of sentencing, the Drugs Minus Two Amendment, U.S.S.G. App. C, amend. 782 and amend. 788 (effective Nov. 1, 2014), would further reduce the Guidelines range to which Henderson would be subject if the mandatory minimum life sentence did not apply. *See* U.S.S.G. § 1B1.13(b)(6) (directing the Court to consider "the sentence likely to be imposed at the time the motion is filed" in determining whether a gross disparity exists).[10]

---

[9]    Indeed, in the undersigned's experience, the prosecutors in this District rarely file informations seeking the enhanced penalty for those defendants with two or more prior convictions for controlled substances.

[10]    Additionally, although the BOP does not calculate good time credit for persons serving life sentences, if Henderson had been sentenced to a term of months, he would likely be eligible for up to 54 days good time credit for each of the years he has served (totaling approximately 756 days or 25 months). *See* 18 U.S.C. § 3624; 28 C.F.R. § 523.20. If added to the time already served, it would equate to a sentence of 215 months, or nearly 18 years.  Henderson asserts in his supplemental motion that his Guidelines range today

12

The Government does not dispute that under the relevant statute in effect at the time Henderson's motion was filed, only one of Henderson's prior convictions would qualify as a serious drug felony, and would result in a mandatory minimum sentence of 180 months incarceration, rather than life. *See* 21 U.S.C. § 841(b)(1)(A)(viii). The difference between these reduced ranges and a lifetime sentence, particularly given Henderson's young age at the time of sentencing (39 years old), constitutes a gross disparity.

## Henderson's Individual Circumstances and Medical Conditions

Finally, subsection (b)(6) requires the Court to consider Henderson's individualized circumstances. Neither the amendment nor the statute expressly limits the Court's discretion as to what such circumstances may be considered in this regard. However, the Court concludes that Henderson's young age at the time of his offenses, his very serious medical conditions, the health risks posed by the COVID-19 pandemic and the conditions at FCI Butner I, and Henderson's commendable rehabilitation—considered together and in light of the time he has already served and his unusually long sentence that so drastically exceeds what Congress now deems appropriate for the crime charged—place him squarely within the narrow subset of sentences presenting "extraordinary and compelling reasons" for a sentence reduction.

With respect to medical conditions, Henderson has submitted strong evidence,

---

would be 292-365 months' imprisonment. ECF No. 317 at 9. However, the retroactive Drugs Minus Two Amendment would reduce Henderson's Guidelines range to 262-327 months' imprisonment.

including sworn declarations from an experienced physician after review of Henderson's medical records (ECF Nos. 281-4, 301-2), that his myriad of serious health issues, detailed in his memoranda, coupled with the COVID-19 pandemic and well publicized issues of understaffing and health hazards at his current prison facility, place him at substantial risk of serious illness or death if he remains incarcerated.

The seriousness of Henderson's medical circumstances, alone, qualify as extraordinary and compelling reasons under other subsections of the amended policy statement, such as §§ 1B1.13(b)(1) ("Medical Circumstances of the Defendant") or (b)(5) (the catch-all provision). And when these medical circumstances are considered among the totality of Henderson's individual circumstances and his unusually long sentence, they certainly qualify as extraordinary and compelling reasons under subsection (b)(6).

The Government argues that the risks to Henderson's health are minimized by various factors, including the expiration of the federal public health emergency declaration related to COVID-19, as announced by the CDC, and Henderson's vaccination against the virus. The Court agrees that end of the public emergency declaration and the vaccines administered to Henderson increase Henderson's protection against the virus. However, even under the CDC's most recent guidance, Henderson remains at substantial risk due to his underlying health conditions. *See People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed Jan. 31, 2024). Indeed,

14

these underlying health conditions led to Henderson's hospitalization for renal failure the last time he was infected with the virus. *See* ECF No. 281-4. Compounding this risk is the fact that Henderson does not appear to have received the most recent dose of the COVID-19 vaccine recommended for people with his underlying medical conditions. *See* ECF No. 329-1 at 2-3.

The Government also contends that the publicized health hazards discussed by Henderson did not affect the facility in which Henderson is being housed; however, this argument is based on the Government's mistaken conclusion that Henderson is being detained at Butner Medium II. *See* ECF No. 322 at 4. BOP records indicate that Henderson is in fact being detained at Butner Medium I, a facility which the Government concedes has been the subject of media coverage for its health risks due to the presence of mold, among other hazards. *See id.*

In addition, after more than 15 years in prison, Henderson has achieved significant rehabilitation. While "[r]ehabilitation of the defendant *alone* shall not be considered an extraordinary and compelling reason," 28 U.S.C. § 994(t) (emphasis added), neither the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), nor the policy statement in U.S.S.G. § 1B1.13, prohibits successful rehabilitation efforts from being considered among the individual circumstances that the Court is required to evaluate under subsection (b)(6). *See* Official Commentary, *supra* n.1, at 7 (describing "commendable rehabilitation while incarcerated" and that the "offense conduct occurred when the defendant was in his late

15

teens or early twenties" among examples of a combination of circumstances that a court may consider in evaluating a motion filed under § 3582(c)(1)(A)); *see also Concepcion v. United States*, 597 U.S. 481, 491 (2022) (holding that district courts have broad discretion, at both initial sentencing and in later proceedings to modify a sentence, "to consider all relevant information . . . consistent with their responsibility to sentence the whole person before them," and that "[s]uch discretion is bounded only *when Congress or the Constitution expressly limits the type of information a district court may consider* in modifying a sentence") (emphasis added).

An examination of the letters of support in the record, including from a Unit Manager at FCC Coleman, USP-2, where Henderson was previously incarcerated, "provides the most up-to-date picture of [Henderson's] 'history and characteristics.'" *Pepper v. United States*, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(1)). For example, Henderson's former Unit Manager describes Henderson's disciplinary history as "minimal" and "almost non-existent," and further states that Henderson "has a generally good rapport with other inmates, who view him as a role model and mentor," is "respectful to staff, and others whom he has encountered," and "follows rules and regulations and conducts himself with professional courtesies that are favorable with staff and other inmates." ECF No. 281-2 at 28, Letter dated Jan. 19, 2022. The same Unit Manager notes that Henderson has consistently maintained a job position during incarceration, with "good to outstanding" work evaluations, and that "if inmate Henderson's actions and behaviors

are continued in the community, he would most likely succeed and not return to prison."
*Id.*

In short, after full consideration of Henderson's individual circumstances and finding that he has met all the requirements of subsection (b)(6), the Court concludes that Henderson has demonstrated extraordinary and compelling reasons warranting a sentence reduction.

## Applicability of *Crandall* and *Rodriguez-Mendez*

The Government argues that Eighth Circuit precedent—specifically, the panel decisions in *United States v. Crandall*, 25 F. 4th 582 (8th Cir. 2022) and in *Rodriguez-Mendez*, *supra*—forecloses reliance on a nonretroactive change in the law as a ground for compassionate release. However, both of these cases were decided before the 2023 amendment to § 1B1.13 took effect. And while the Government correctly notes that *Rodriguez-Mendez* briefly discussed the amendment (which had only been proposed at that time and had not yet taken effect), 65 F.4th at 1004, any such discussion was dicta. *See Sanzone v. Mercy Health*, 954 F.3d 1031, 1039 (8th Cir. 2020) (dicta is not binding).

The only issue presented and decided in *Rodriguez-Mendez* was whether *Crandall* remained binding as of April 25, 2023 (the date of the panel's decision in *Rodriguez-Mendez*), or whether *Crandall* had been implicitly overruled by the Supreme Court's intervening decision in *Concepcion*, 597 U.S. 481. *See* 65 F.4th at 1001. The appellate court's commentary regarding the proposed subsections (b)(6) and (c), and the potential

meaning of these subsections, was unnecessary to the court's ruling.

Further, the dicta in *Rodriguez-Mendez* on which the Government relies, while unclear, appears to contradict the plain reading of subsection (b)(6).  *See Rodriguez-Mendez*, 65 F.4th at 1004 (partially quoting subsections (b)(6) and (c), and then commenting that "[i]t thus appears that the Commission proposes to adopt (or to express more clearly) that nonretroactive changes in sentencing  law may *not* establish eligibility for a § 3582(c)(1)(A) sentence reduction") (emphasis in original).   As discussed above, subsection (b)(6)—read together with subsection (c), which expressly exempts (b)(6)— plainly establishes eligibility for a § 3582(c)(1)(A) reduction based on nonretroactive changes in sentencing law (other than nonretroactive amendments to the Guidelines Manual) in certain narrowed circumstances.  The Court is bound by this applicable policy statement.  *See Crandall,* 25 F. 4th at 584 ("Although a policy statement standing alone may be merely 'advisory,' . . . the statute in this case makes consistency with an applicable policy statement a *mandatory* condition for a reduction in sentence.") (citations omitted).

The language of subsection (b)(6) is unambiguous.  But if there were any doubt, the official commentary to the amendment makes the Commission's intent explicit: "The amendment agrees with the circuits that authorize a district court to consider nonretroactive changes in the law as extraordinary and compelling circumstances warranting a sentence reduction but adopts a tailored approach that narrowly limits that principle" in the ways discussed above (requiring an unusually long sentence, at least 10 years served, gross

18

disparity, and consideration of individual circumstances).  Official Commentary, *supra* n.1, at 12; *see also Stinson v. United States*, 508 U.S. 36, 44–45, (1993) (holding that the commentary to the Guidelines is to "be treated as an agency's interpretation of its own legislative rule" and given "controlling weight unless it is plainly erroneous or inconsistent with" the guideline it interprets) (citation omitted).[11]

## Validity of Subsection (b)(6)

Alternatively, the Government argues that subsection (b)(6) is an invalid exercise of the Commission's authority.  Specifically, the Government contends that subsection (b)(6) conflicts with § 3582(c)(1)(A) because nonretroactive changes to sentencing law are neither extraordinary nor compelling.  The Government further argues that the subsection raises separation-of-powers concerns because it contradicts Congress's deliberate choice not to make the change in sentencing law here retroactive.

The Court disagrees.  "Congress is not shy about placing [sentencing modification] limits where it deems them appropriate." *Concepcion*, 597 U.S. at 494.  In this case, Congress broadly empowered and directed the Commission to issue binding guidance as to what circumstances qualify for potential reduction.  *See* § 3582(c)(1)(A).  Nothing in the statute's text prohibits the Commission from considering nonretroactive changes in the law

---

[11] Although, "there is circuit disagreement on the deference to be afforded the Guidelines' commentary," neither the Eighth Circuit sitting en banc nor the Supreme Court has overruled Eighth Circuit precedent adhering to *Stinson.  United States v. Rivera*, 76 F.4th 1085, 1091 (8th Cir. 2023); *see also  Ratzloff v. United States*, No. 23-310, 2024 WL 71948, (U.S. Jan. 8, 2024) (declining to hear appeal seeking to resolve the circuit split).

as extraordinary and compelling reasons for a sentence reduction.

The absence of any such limitation is telling.  Congress could have drafted such a blanket prohibition into § 3582(c)(1)(A), as it did in 28 US.C. § 994(t) by specifying that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."  *See also Concepcion*, 597 U.S. at 497 ("Congress has shown that it knows how to direct sentencing practices in express terms.").  Congress chose not to impose a similar prohibition with respect to nonretroactive changes in the law.

The Government also echoes the Eighth Circuit's concern expressed in *Crandall* that considering nonretroactive change in the law as a ground for a sentence reduction would result in a "freewheeling opportunity for resentencing" with no "sound limiting principle." *Crandall*, 25 F.4th at 585-6.  However, the Commission squarely addressed that concern when drafting subsection (b)(6), by narrowly limiting the circumstances in which a defendant may be resentenced.  Rather than categorically permitting relief based on nonretroactive changes in the law, subsection (b)(6) requires a case-specific, context-based determination and allows for relief only in those cases where a defendant has served (i) at least 10 years (ii) of an unusually long sentence, and (iii) a change in law has produced a "gross disparity" between the sentence being served and the sentence likely to be imposed at the time the motion is filed.

As with legislative rules adopted by federal agencies, guidelines and policy statements such as the amended § 1B1.13 are a matter of the Commission's "particular area

of concern and expertise," and as a result of an express congressional delegation of authority, the "Commission itself has the first responsibility to formulate and announce" such policy statements. *Stinson*, 508 U.S. at 45. When "Congress entrusts to the [Commission], rather than to the courts, the primary responsibility for interpreting the statutory term[,] . . . [a] reviewing court is not free to set aside [that interpretation] simply because it would have interpreted the statute in a different manner." *Batterton v. Francis*, 432 U.S. 416, 425 (1977). Indeed, as the Commission notes in its commentary, the Government itself has on several occasions successfully blocked Supreme Court review of the issue of whether nonretroactive changes in the law may be considered under § 3582(c)(1)(A) as extraordinary and compelling reasons on the ground that the issue "should be addressed first by the Commission." *See* Official Commentary, *supra* n.1, at 6 (citing the Department of Justice's opposition to grant of certiorari in various cases).

The Commission has now addressed the issue and has adopted an applicable policy statement that establishes Henderson's eligibility for a sentence reduction in this case. Considering the record as a whole, the Court concludes that Henderson has demonstrated extraordinary and compelling reasons warranting a sentence reduction.

**Dangerousness and Section § 3553(a) Factors**

Looking to the factors under 18 U.S.C. § 3553(a) at the time of sentencing, the Court recognizes that Henderson was convicted for a substantial drug trafficking offense. But the Court further notes that Henderson had fairly minimal prior criminal history and was in

21

criminal history category II.  As noted above, his only two prior convictions were for

possession of cocaine, at age 18, for which he received a suspended imposition of sentence

and was placed on one year of probation; and for the illegal sale of cocaine, at age 22, for

which he was sentenced to 10 years, was paroled on May 26, 2000, and had his parole

discharged on May 10, 2005.  Growing up, he had no significant contact with his father

since age five and received no support from him.  He was raised by his grandmother, and

his mother suffered from kidney failure and received disability.  He completed only the

tenth grade, but received his GED while incarcerated.  Thus, there were factors at the time

of sentencing supporting a downward variance from the Guideline range.

The Court also believes that Henderson would not pose a danger to the community if

released early.  The Government's allegations regarding Henderson's plot against his

informants more than 15 years ago, while undoubtedly serious, have never been proven and

stand in stark contrast to the picture the BOP itself has painted of Henderson's character

today.  None of Henderson's current or prior convictions involved allegations of violence.

Indeed, as previously stated, his prior convictions occurred more than 30 years ago and

were both non-violent drug offenses, one for mere possession at the age of 18.

Further, Henderson has had no history of violence during his incarceration and only

four minor disciplinary infractions—the last occurring in 2016—during his more than 15

years incarcerated.  As noted above, even Henderson's own Unit Manager at his former

prison facility described his disciplinary history as "almost non-existent" and believed that

Henderson would be likely to succeed after release.  And the Government does not dispute that the BOP transferred Henderson to his current facility based on his reduced security rating.  For all of these reasons, the Court concludes that Henderson does not pose a danger to the community.

In short, Henderson's background and his history and characteristics over the past decade and a half weigh strongly in favor of granting his motion.  The seriousness of Henderson's offenses and any prior offenses is reflected in the 15 years he has already served.  Further, Henderson will still be subject to a 10-year term of supervision upon his release from prison, the terms of which additionally promote respect for the law, protect the public, and afford adequate deterrence of future criminal conduct.  Finally, to assure that Henderson has a proper transition and a proper home plan, the Court will add a special condition of up to six months at a residential reentry center, as deemed appropriate by the probation office.

## <u>CONCLUSION</u>

After considering all the sentencing factors set out in 18 U.S.C. § 3553(a), the Court concludes that the amount of time that Henderson has already served is sufficient but not more than necessary to meet the sentencing objectives of the statute, and that he should be granted compassionate release.  The Court will thus reduce Henderson's sentence to time served, plus a term of 10 years of supervised release.  As previously indicated, the Court will also add an additional condition of supervision up to six months at a residential reentry

center, as deemed appropriate by the probation office, and will update the terms of supervised release to reflect current language.   Finally, the Court will provide that the BOP may delay Henderson's release for a period not to exceed 14 calendar days for the purpose of investigating a home plan, any necessary quarantine or medical care, or to make travel arrangements for release.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Stephen Henderson's motions for compassionate release are **GRANTED as follows**.  ECF Nos. 281, 304 & 317. Defendant's sentence of imprisonment in this case is reduced to time served, plus a term of 10 years of supervised release.  An additional period of up to six months at a residential reentry center, as deemed appropriate by the probation office, will be added to his conditions of supervision.  The terms of supervised release will be further updated to reflect current language.  The BOP may delay Henderson's release for a period not to exceed 14 calendar days for the purpose of investigating a home plan, any necessary quarantine or medical care, or to make travel arrangements for release.

An Amended Judgment complying with this Order and Memorandum is entered separately today.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of February, 2024.